IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TSI USA, LLC,                              §
                                          §
              Plaintiff,                   §
                                          §
V.                                        §          No. 3:16-cv-2177-L
                                          §
UBER TECHNOLOGIES, INC.,                   §
                                          §
              Defendant.                   §

## MEMORANDUM OPINION AND ORDER OF TRANSFER

Defendant Uber Technologies, Inc. ("Defendant" or "Uber") has filed a Motion

to Transfer Case out of District/Division pursuant to 28 U.S.C. § 1404. *See* Dkt. No. 10

(the "Motion to Transfer Venue"). United States District Judge Sam A. Lindsay has

referred the motion to the undersigned United States Magistrate Judge for hearing,

if necessary, and determination pursuant to 28 U.S.C. § 636(b). *See* Dkt. No. 13.

Plaintiff TSI USA, LLC ("Plaintiff" or "TSI") filed a response, *see* Dkt. No. 16,

and Uber has filed a reply, *see* Dkt. No. 18.

The Court GRANTS Uber's Motion to Transfer Venue [Dkt. No. 10] for the

reasons explained below.

### Background

TSI is a Delaware limited liability company whose principal place of business

is Dallas, Texas. It "contracts with businesses and individuals to manage, schedule,

book and optimize their airline, hotel, and related travel needs." Dkt. No. 7 at 3.

Uber is a software technology company organized under Delaware law. Its principal place of business is San Francisco, California, where about 3,300 of its 5,800 U.S. employees work. It "connects riders to automobile drivers in approximately 150 cities in 50 countries." *Id.*

In 2014, Uber circulated a Request for Proposals (the "RFP") seeking proposals from travel agencies for corporate travel services to be provided to its employees. Uber alleges that TSI responded to the RFP with certain misrepresentations about the size and scale of TSI's operation.

Uber ultimately agreed to pay TSI to create an international travel services program that Uber's employees could utilize to make travel arrangements. The parties executed two contracts on November 24, 2014 to commemorate this arrangement – (i) a Services Agreement (the "Services Agreement") and (ii) a Statement of Work for Uber Global Travel Management Services (the "Statement of Work" or "SOW"; collectively with the Services Agreement, the "Contract").

TSI then filed this lawsuit. TSI alleges that, after Uber "induced TSI to spend capital and deploy personnel to create and implement an international travel services program," it "constantly added and changed specifications," prematurely terminated the parties' agreements, and "refuse[d] to pay TSI" the money that Uber owes. *Id.* at 1. TSI also alleges that "Uber directed its new travel services vendor to hire away at least one of TSI's employees … in breach of that employee's contract with TSI" and that Uber's management "began to make false, defamatory and damaging comments to at least one TSI client." *Id.* at 2.

"Uber anticipates filing a counterclaim." Dkt. No. 11 at 3. Uber alleges that TSI is a small limited liability company and argues that TSI therefore "committed fraud in the inducement by representing itself [to Uber] as a Delaware corporation with global operations and 3,000 employees in 33 countries and $3 billion in revenue, and by representing it could provide services it lacked the personnel or capacity to provide." *Id.* at 4. Uber also argues that "TSI committed numerous material breaches of the [parties' agreements], including failing to provide required services and failing to launch the travel program in the required timeframe." *Id.*

Uber has since filed the pending Motion to Transfer Venue. Uber contends that this case should be transferred to the Northern District of California's San Francisco Division pursuant to Section 12.1 of the Services Agreement (the "Forum-Selection Clause"). The Forum-Selection Clause provides that:

> This Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to its choice or conflict of laws provisions. Consultant hereby consents to exclusive jurisdiction and venue in the state and federal courts sitting in San Francisco County, California.

Uber argues that there are "no extraordinary circumstances" to permit this Court to disregard the clause. *Id.* at 2.

TSI disagrees. It argues that the Forum-Selection Clause is no longer in effect in light of Section 11.2 of the Agreement (the "Survival Clause"). The Survival Clause provides, in pertinent part, that "[o]utstanding payment obligations and Sections 1, 3-9, 10.3, and 11 of this Agreement shall survive any termination of this Agreement." *See* Dkt. No. 16 at 2. TSI asserts that the Forum-Selection Clause – that is, Section 12.11

of the Services Agreement – does not apply to this dispute because it was not among the provisions enumerated in the Survival Clause. It also argues that the Forum-Selection Clause is too ambiguous to be unenforceable and would not apply to its Tortious Interference and Defamation claims even if enforceable.

## Legal Standards and Analysis

I.   <u>The Forum-Selection Clause does not survive termination of the Contract.</u>

The Court finds that the Forum-Selection Clause only applies to dispute litigated during the life of the Contract for the reasons explained below. Because the Forum-Selection Clause consequently does not apply to this dispute, the Court's analysis does not address TSI's arguments concerning either the ambiguity of the Forum-Selection Clause or its applicability to TSI's specific claims.

A.   Texas' choice-of-law rules determine the body of law that governs the <u>interpretation of the Survival Clause and the Forum-Selection Clause.</u>

Courts in the Fifth Circuit apply the forum state's choice-of-law rules to interpret the scope of a forum-selection clause and federal law to determine the enforceability of a forum-selection clause. *See Barnett v. DynCorp International, L.L.C.*, 831 F.3d 296, 301-02 (5th Cir. 2016). But, as the Fifth Circuit has recently remarked, it is less clear what body of law governs when determining the validity of a forum-selection clause. *See id.*

In *Barnett v. DynCorp International, L.L.C.*, the Fifth Circuit observed that "the 'validity' of a forum-selection clause is [arguably] a matter of substantive contract law," in which case, courts apply the body of law dictated by a state law's choice-of-law rules.

-4-

*Id.* But the Court of Appeals also noted that "validity is [arguably] just part of the federal law of enforceability, which heavily favors forum-selection clauses." *Id.* at 302.

The Court will apply the body of law dictated by Texas' choice-of-law rules to this dispute. TSI does not appear to challenge the validity of the Forum-Selection Clause. It, instead, argues that the parties agreed that the Forum-Selection Clause only applied during the life of the Contract, not after termination. And that is a question of scope, not validity.

The Court acknowledges that TSI's argument could be framed as a challenge to the Forum-Selection Clause's continued validity but is still inclined to apply Texas' choice-of-law rules even if the issue is so framed – without weighing in on the dispute discussed in *Barnett* as to what body of law typically applies when a forum-selection clause's validity is wholly in question. In *Barnett*, the plaintiff argued that the forum-selection clause was "void under Texas law" since "it directs litigation to a forum in which the limitations period of breach of an employment contract is less than two years" in violation of Texas Civil Practice & Remedies Code § 16.070. *Id.* at 300. In other words, the plaintiff challenged the forum-selection clause's validity by arguing that it was void by its terms under Texas law.

This case is different. TSI's argument turns on the interpretation of the Survival Clause. If the Survival Clause lists every provision of the Contract that shall survive termination, as TSI contends, then the Forum-Selection Clause is only applicable during the life of the Contract. If the Survival Clause is only meant to apply to those provisions that would otherwise not survive the Contract and therefore does not apply

to the Forum-Selection Clause, as Uber contends, then the Forum-Selection Clause does survive termination of the Contract.

The Survival Clause's interpretation is a matter of substantive contract law that is governed by a state's choice-of-law rules. *See Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). The fact that the interpretation implicates the Forum-Selection Clause's scope and continued validity does not change that.

B.    Under Texas' choice-of-law rules, California law applies regardless of whether the California choice-of-law provision applies to this dispute.

It is not immediately apparent what body of law should govern this dispute under Texas' choice-of-law rules. The Forum-Selection Clause contains a choice-of-law provision that could dictate the body of law that should be used to interpret the Survival Clause. But the interpretation of the Survival Clause could dictate that the Forum-Selection Clause is no longer effective.

The Fifth Circuit has observed that other circuits "have [generally] applied foreign law to determine the meaning of a [forum-selection clause]." *Weber*, 811 F.3d at 770. But the Court of Appeals declined to make this a hard and fast rule. *Id.* at 770-71. The Fifth Circuit explained that "this premise can only apply when the contract contains a valid and explicit choice of law provision selecting the law of a foreign forum." *Id.* at 770 n.19. And, as noted above, it is not clear whether or not a valid choice-of-law provision remains in effect.

The Fifth Circuit recently suggested that courts applying Texas law can constructively split the difference between blindly adhering to a choice-of-law provision (although it may not otherwise be in effect) and wholly ignoring it (although it may otherwise control the dispute). In *Barnett*, the Fifth Circuit was asked to evaluate the validity of a choice-of-law provision that the plaintiff alleged was invalid because it violated Texas Civil Practice & Remedies Code § 16.070. *See* 831 F.3d at 302. The Court of Appeals largely grounded its analysis in Texas' adopting the Restatement (Second) of Conflict of Laws § 187. *Id.* at 304. Section 187 provides that, "if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue," the Court would elect to defer to the body of law identified in an otherwise inapplicable choice-of-law provision unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2).

The Fifth Circuit then "assume[d], in Barnett's favor, that [it was] dealing with an issue the parties 'could [not] have resolved by an explicit provision in their agreement directed to that issue'" and applied the analysis directed by Section 187. *Barnett*, 831 F.3d at 305 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)).

-7-

The Court makes the same assumption here and concludes, pursuant to Section 187, that California law shall apply to this dispute. California plainly has a substantial relationship to the parties and the transaction. The RFP process transpired in Uber's headquarters in San Francisco, California, such that the Contract was negotiated and entered into in California. *But see* Dkt. No. 17 at 7 (suggesting that there was not much "negotiation" since "[t]he Services Agreement that contains the forum selection clause … was [technically] drafted in its entirety by Uber or its counsel"). The Agreement's primary purpose was for TSI to create a travel services program that Uber employees could utilize, and more Uber employees work in California than in any other state. And Uber's principal place of business is located in California. This is sufficient where neither party contends that applying California law to the dispute would be "contrary to a fundamental policy of a state with a materially greater interest," as determined by Restatement (Second) of Conflict of Laws § 188. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2).

Even if a party made this argument, there does not appear to be any other state that has a materially greater interest in the dispute. Pursuant to Section 188, courts consider several factors according to their relative importance to determine the forum with the most significant connection to the dispute. These include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation, and place of business of the parties." *Weber*, 811 F.3d at 772 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)). "[I]n

-8-

contracts for rendition of services, the court should look to the law of the place where the contract specifies that the services should be rendered. When a contract for services gives a place for performance, '[a]s a rule, that factor alone is conclusive in determining what state's law is to apply.'" *Weber*, 811 F.3d at 772 (quoting *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 679 (Tex. 1990)).

As explained, the place of contracting, the place where the contract was negotiated, and the location of the subject matter all favor applying California law. These connections are sufficient since the Services Agreement does not specify that the services should be performed in any particular locale. This suggests that the place of performance was not especially important to the parties' Contract – as might be expected in a contract for services that are performed remotely. *See* Section 2.3 of the Services Agreement, Dkt. No. 7, Ex. 1 at 5 (the "Performance Clause") (providing that "[t]he manner and means by which Consultant chooses to complete the Services are in the Consultant's sole discretion and control"). And the remaining considerations – the domicil, residence, nationality, place of incorporation, and place of business of the parties – do not appear to notably influence this analysis. The parties are both incorporated in Delaware, and their principal places of business differ – TSI's principal place of business is in Dallas, Texas, and Uber's is in San Francisco, California.

The Court will apply California law in interpreting the Forum-Selection Clause's scope and continued validity.

C.      The Forum-Selection Clause does not survive under California law.

Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." CAL. CIV. CODE § 1636. Courts determine the parties' intent in a written contract based on how it was objectively expressed in words therein, *see id.* § 1639, considering every part of the contract, *see id.* § 1641.

Courts also consider the terms in a contract in light of "the circumstances under which [the contract] was made, and the matter to which it relates." *Id.* § 1647. "The terms of a writing are presumed to have been used in their primary and general acceptance, but evidence is nevertheless admissible that they have a local, technical, or otherwise peculiar signification, and were so used and understood in the particular instance." *Id.* § 1861. All applicable laws and ordinances in existence when the agreement is made become a part of the contract. *See* B.E. WITKINS, WITKIN SUMMARY OF CALIFORNIA LAW, Tenth Edition § 752 (2005). Where the language of a contract is clear and not absurd, it will be followed. *See* CAL. CIV. CODE § 1638. In cases of uncertainty, the language of a contract should be interpreted "most strongly against the party who caused the uncertainty to exist." *Id.* § 1654.

The parties' dispute centers on how to interpret the Survival Clause. The Survival Clause provides that certain provisions "shall survive any termination of the Agreement" and does not include the Forum-Selection Clause among them.

TSI argues that the Survival Clause's failure to include the Forum-Selection Clause means that the Forum-Selection Clause did not survive termination of the

agreement. Uber argues that the only reason that the Survival Clause does not expressly provide for the Forum-Selection Clause's survival is that it would have been redundant to do so. It contends that "[t]erms such as a forum selection clause that relate to remedies and dispute resolution survive termination of a contract regardless. The fact that a contract sets forth in a survival clause <u>additional</u> terms that survive termination does not change that fact." Dkt. No. 18 at 6 (emphasis in original).

The Court finds TSI's interpretation to be more persuasive. A plain reading of the terms of the Contract suggests that the Forum-Selection Clause does not survive the Contract's termination. A survival clause's purpose is to enumerate any clauses that will remain in effect after the agreement's termination. The omission of the Forum-Selection Clause from the Survival Clause therefore suggests that the parties did not intend for the Forum-Selection Clause to survive termination of the agreement. As the maxim "expressio unius est exclusio alterius" provides, the "mention of one matter implies the exclusion of all others." *Steven v. Fidelity & Cas. Co. of New York*, 58 Cal.2d 862, 870 (Cal. 1962).

This is especially apparent since the terms of the Forum-Selection Clause do not indicate whether it will survive termination. The Forum-Selection Clause only provides that:

> This Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to its choice or conflict of laws provisions. [TSI] hereby consents to the exclusive jurisdiction and venue in the state and federal courts sitting in San Francisco County, California.

This provision could be read to mean that it should apply to disputes relating to the interpretation of the Contract, whether the agreement survives termination or not. It could alternatively be read to apply to such disputes so long as they are litigated throughout the course of the Contract. The Survival Clause's omission of the Forum-Selection Clause helps clarify that the Forum-Selection Clause is only meant to apply during the life of the Contract. *See In re Spirtos*, BAP No. CC-10-1118-PaDKi, 2011 WL 3298952, at *7 (B.A.P., 9th Cir. Feb. 2, 2011) (citing Cal. Civ. Code § 1641; *Harris v. Klure*, 23 Cal.Rptr. 313, 315 (Cal. Ct. App. 1962)) (observing that, under California law, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"); *see also Junction Solutions, LLC v. MBS DEV, Inc.*, No. 06 C 1632, 2007 WL 114306, at *4-*5 (N.D. Ill. Jan. 9, 2007) (finding that the forum-selection clause did not survive termination in light of a survival clause because a finding otherwise "would render superfluous the Settlement Agreement's specific provision for the survival of the Employment Agreement's confidentiality obligations."). Moreover, "[t]he language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist," CAL. CIV. CODE § 1654, and Uber drafted the Contract.

Uber argues that "TSI's 'expressio unius' argument lack merits," Dkt. No. 18 at 6 n.3, because the Survival Clause was only meant to set forth the "additional terms that survive termination" and "a forum selection clause remains operative regardless of whether a contract has terminated," *id.* at 6 (emphasis in original).

-12-

Uber's interpretation is not supported by general contract principles. Courts consider evidence of the circumstances under which an agreement was formed if relevant to provide a meaning of which the contractual language is at least "reasonably susceptible." WITKINS, WITKIN SUMMARY OF CALIFORNIA LAW, Tenth Edition § 748. The circumstances under which the Contract was formed do not appear to support Uber's interpretation – even assuming that the Survival Clause is reasonably susceptible to it. The parties are presumed to enter into agreements against the backdrop of any applicable law. *See id.* at § 752 (explaining that all applicable laws in existence when the agreement is made become part of the contract).

Uber's argument that it would be redundant to include the Forum-Selection Clause in the Survival Clause thus turns on one question: Would a reasonable party contract against the risk that the Forum-Selection Clause does not survive under California law when it is not enumerated in the Survival Clause? The Court believes so. Uber purports that "[c]ourts have uniformly held that a forum-selection clause presumptively survives termination of the contract." Dkt. No. 18 at 3. This is not precisely correct. *See, e.g.*, *Lockwood Corp. v. Black*, 501 F. Supp. 261, 265 (N.D. Tex. 1980) (finding that the forum-selection clause terminated on the date the written contract was cancelled); *Junction Solutions*, 2007 WL 114306, at *4-*5 (finding that the forum-selection clause did not survive termination because it was omitted from a survival clause). Regardless, most of these cases do not hold that a forum-selection clause survives when, as here, a survival clause indicates otherwise. And they largely do not apply California law.

-13-

In contrast, California has long applied the contractual principles supporting TSI's interpretation, which should have given Uber notice that a forum-selection clause might not survive under these circumstances. These include the maxims that: (i) a contract should be interpreted by the plain meaning of the terms, *see* CAL. CIV. CODE § 1639, considering every part of the contract, *id.* § 1641; (ii) the inclusion of one provision suggests the purposeful exclusion of another, *see Steven*, 58 Cal.2d at 871; and (iii) an unclear contract is interpreted "most strongly against the party who caused the uncertainty to exist," *see* CAL. CIV. CODE § 1654; *Steven*, 58 Cal.2d at 871.

Uber cites to a few cases (not applying California law) that have found a forum-selection clause to survive termination even when it is not mentioned in a survival clause. *See, e.g.*, *AAMCO Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700 (E.D. Pa. 2014); *TriState HVAC Equipment, LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517 (E.D. Pa. 2014). But, at most, these cases suggest that a court applying California law might have reached the same conclusion. A reasonable party in Uber's position would contract against this uncertainty – especially considering that Uber drafted the Contract. As the California Supreme Court has explained, "'[p]arties enter into contracts to allocate risks and to bring certainty, order, and predictability to their mutual relations.'" *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 936-37 (Cal. 2005) (quoting *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 494 (Cal. 1992)).

The cases that Uber cites are inapposite in any event. Uber primarily relies on *AAMCO Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700 (E.D. Pa. 2014), to support its position. But the *AAMCO* court explained that

> [c]ourts finding that forum selection clauses remained in effect have relied primarily on the broad language of the forum selection clauses and the absence of any explicit language indicating the termination of the clause.

*Id.* at 707; *see also Advent Electronics, Inc. v. Samsung Semiconductor, Inc.*, 709 F. Supp. 843, 846 (N.D. Ill. 1989) (observing that the presumption that a broadly written forum-selection clause survives termination could be overcome by contractual language either "explicitly or implicitly indicating" otherwise). When a forum-selection clause purports to apply to "any proceedings which arise out of or are connected in any way with this Agreement or its performance," *AAMCO*, 42 F. Supp. 3d at 705, it might be appropriate to find that the forum-selection clause was intended to apply to post-termination disputes even it is not mentioned in a survival clause. *But see Junction Solutions*, 2007 WL 115306, at *5 (finding that a forum-selection clause purportedly applicable to "any claim or cause of action arising under this Agreement" did not survive termination because it was not included in a survival clause). In these cases, courts are forced to interpret a contract in which two terms at least facially appear to contradict one another.

But when two terms can be reconciled, courts are generally directed "to give effect to every part" of the contract so that "each clause help[s] to interpret the other." *In re Spirtos*, 2011 WL 3298952, at *7 (citing Cal. Civ. Code § 1641; *Harris*, 23

Cal.Rptr. at 315). The Forum-Selection Clause and Survival Clause can be reconciled here. The terms, indeed, appear to complement one another. The Survival Clause's omission of the Forum-Selection Clause helps explain why it does not purport to apply to disputes during the life of the Contract or even any and all disputes between the parties.

Uber appears to argue that TSI's interpretation of the agreement would render the Forum-Selection Clause largely meaningless because "[m]ost breach of contract lawsuits are filed after – indeed because – a contractual relationship has ended." Dkt. No. 18 at 4 (emphasis in original). Uber may be right about the timing of most such lawsuits. But, if the parties only agreed to have the Forum-Selection Clause apply to disputes that are litigated during the life of the Contract, it is not the Court's place to second-guess their intent to do so. The Court notes that California courts only started enforcing forum-selection clauses – after previously viewing them with disfavor – largely out of deference to the parties' freedom to contract. *See Alexander v. Superior Court*, 114 Cal.App.4th 723, 729-30 (Cal. Ct. App. 2003) ("[I]n concluding that forum selection clauses were permissible in California, [the California Supreme Court] stated: 'While it is true that the parties may not deprive courts of their jurisdiction over causes by private agreement, ... it is readily apparent that courts possess discretion to decline to exercise jurisdiction in recognition of the parties' free and voluntary choice of a different forum.'") (quoting *Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal.3d 491, 495 (Cal. 1976)). "The nonpaternalistic corollary to this freedom is that courts assume that each party to a contract is alert to, and able to protect, his or her own best

interests." *Series AGI West Linn of Appian Group Investors DE LLC v. Eves*, 217 Cal. App. 4th 156, 164 (Cal. Ct. App. 2014). "'The courts cannot make better agreements for parties than they themselves have been satisfied to enter into or rewrite contracts because ... they would be improvident or unwise.'" *Id.* (quoting *Walnut Creek Pipe Distributors, Inc. v. Gates Rubber Co.*, 228 Cal.App.2d 810, 815 (Cal. Ct. App. 1964)).

Uber contends that TSI's interpretation leads to absurd results. It argues that, "[u]nder TSI's reasoning, forum selection clauses would thus nearly always cease to remain in effect." Dkt. No. 18 at 4. The Court disagrees. TSI only asserts that, "by leaving the forum selection clause off the list of surviving provisions in the Survival Clause, the parties excluded it from post-termination application." Dkt. No. 16 at 5. It does not argue that, in the absence of any indication to the contrary, a forum-selection clause should not generally survive post-termination.

Uber also argues that, under TSI's reasoning,

> critical provisions in the Contract under which it has filed suit simply
> disappear because it waited to file suit until after the Contract was
> terminated.... [B]eyond the forum selection clause, none of the terms in
> Section 12 of the Contract would apply because none are listed in the
> survival clause, including: the choice of law clause (§ 12.1), the no-oral
> modification clause (§ 12.2), the prohibition against assignments (§ 12.4),
> the severability clause (§ 12.7), and the provision affirming that the
> parties jointly drafted the Contract (§ 12.9). Indeed, even the provisions
> governing "Services" and "Personnel" TSI claims to have provided would
> cease to have any effect since the section describing them (§ 2) is not
> among those in the survival clause. Under TSI's reasoning, these
> provisions apply if a lawsuit is brought before the Contract was
> terminated, but they do not apply in any lawsuit brought after
> termination; thus a party could game the process and change key
> contractual terms simply by terminating the Contract before filing suit.

*Id.* at 6.

Uber's argument assumes that each of the "critical provisions" that it identifies must survive termination of the contract if they are to be invoked in a lawsuit filed after termination. They do not. Although TSI has brought this lawsuit after termination of the Contract, its claims are plainly based on obligations that Uber allegedly owed to it before the Contract was terminated. The Court can consider all terms that were in effect at the time of any alleged breach to the extent that they inform the parties' obligations to one another with respect to that alleged breach.

Accordingly, a "no-oral modification" provision does not need to be in effect for the Court to recognize that it was in effect at some point in time. The same is true of a remedies provision. If Uber breached the Contract at a time when a remedies provision was still in effect, it would be fair for either party to invoke that provision even after the Contract's termination.

Forum-selection clauses are different. A forum-selection clause does not in any way illustrate whether a party has performed any of the other provisions of the contract at a time when the contract was in effect. It merely "establish[es] the place (such as the country, state, or type of court)" for any specified disputes to be heard. *Quality Custom Rail & Metal, LLC v. Travelers Cas. and Sur. Co. Of America*, No. 3:13-cv-3587-D, 2014 WL 840046, at *4 n.6 (N.D. Tex. March 4, 2014) (quoting *BBC Chartering & Logistic GmbH & Co. K.G. v. Siemens Wind Power A/S*, 546 F. Supp. 2d 437, 442 (S.D. Tex. 2008) (quoting BLACK'S LAW DICTIONARY 681 (8th ed.2004))). For a party to invoke a forum-selection clause in a dispute post-termination, the parties must have intended for it to apply to those disputes. *See Advent*, 709 F.Supp. at 846

(noting that "[t]he intent of the parties as to the continued applicability of a forum selection clause controls")."In the absence of contractual language expressly or implicitly indicating the contrary, a forum selection clause [likely] survives termination of the contract." *Id.* (concluding that the forum-selection clause survives, without mention of any survival clause, because the parties used broad language in the forum-selection clause indicating an intent that all disputes arising from the Distribution Agreement would be resolved in the chosen forum, regardless of the timing of the breach). But, where the agreement suggests that the forum-selection clause does not survive – by, for instance, not including it in a clause identifying the terms that will survive the agreement – the provision has no effect after the contract's termination. *See Junction Solutions*, 2007 WL 114306, at *4-*5 (finding that the forum-selection clause does not survive because it was not enumerated in a survival clause).

For these reasons, the Court concludes that the Forum-Selection Clause was only in effect during the life of the agreement and is not applicable to this dispute.

II.   **The action should still be transferred to the Northern District of California for** <u>forum non conveniens</u>.

But the Motion to Transfer Venue's fate ultimately does not turn on whether the Forum-Selection Clause applies to disputes after the termination of the Contract. In the absence of a valid and enforceable forum-selection clause, the Court may still transfer an action for forum non conveniens pursuant to a traditional 28 U.S.C. § 1404(a) analysis. *See Atlantic Marine Const. Co., Inc. v. United States District Court*, 134 S. Ct. 568, 580 (2013) ("Section 1404(a) is merely a codification of the doctrine of

*forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer."). The Court elects to do so here.

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A plaintiff's original choice of forum is ordinarily entitled to some deference. *See In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). This means that the moving party must "demonstrate[] that the transferee venue is clearly more convenient." *Id.* But, while a plaintiff's choice of forum "should be respected" unless "the transferee venue is clearly more convenient," Plaintiff's "choice of forum ... is not an independent factor within ... the § 1404(a) analysis." *Id.* at 314 n.10, 315 (internal quotation marks omitted). Rather, "a plaintiff's choice of venue is to be treated as a burden of proof question." *Id.* at 314 n.10 (internal quotation marks omitted).

In applying Section 1404(a), the Fifth Circuit directs that courts must first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once this determination is made,

> [the Court] turn[s] to the language of § 1404(a), which speaks to the issue of "the convenience of the parties and witnesses" and to the issue of "in the interest of justice." The determination of "convenience" turns on a number of private and public factors, none of which [is] given dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the

attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Id.* (citations omitted).

Transfer of venue under Section 1404(a) is at the Court's discretion, considering "'[a]ll relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *El Chico Restaurants of Texas, Inc. v. Carroll*, No. 3:09-cv-2294-L, 2010 WL 2652286, at *2 (N.D. Tex. June 29, 2010) (quoting *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989)).

As an initial matter, the Court determines that this action could have been brought in the Northern District of California. Civil diversity actions, such as this one, may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State," among other locations. 28 U.S.C. § 1391(b)(1). Uber is the only defendant in this action, and its principal place of business is San Francisco, California. This means it "resides" in the Northern District of California. *See* 28 U.S.C. § 1391(c) (providing that an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action); *Daimler AG v. Bauman*, 134 S.Ct.

-21-

746, 761 (2011) (providing that "the place of incorporation and principal place of business" are where a corporation is "at home" and thus "paradigmatic bases for [personal] jurisdiction").

The Fifth Circuit's convenience factors also weigh in favor of transferring the action to the Northern District of California's San Francisco Division.

First, transferring the action would implicate the public interest to alleviate the administrative difficulties concerning court congestion and the private interest in "mak[ing] trial of a case easy, expeditious and inexpensive." *See Volkswagen II*, 545 F.3d at 315. The Northern District of Texas "is more congested than that of the Northern District of California." Dkt. No. 11 at 7. "According to the most recent court management statistics provided by the United States Courts, as of June 30, 2016, the judges in the Northern District of Texas each had 1,208 pending cases on average, ... while the judges in the Northern District of California each had 549 pending cases." *Id*. Accordingly, "the median time to trial for civil cases is 26.9 months in the Northern District of Texas and 24.6 months in the Northern District of California." *Id*. at 6.

TSI counters that adjudicating cases "2.3 months quicker" is not significant. By so arguing, it assumes that this is the only time that would be saved by transferring the action. It likely is not. Judges in the Northern District of California are more familiar with applying California law and may be able to resolve the dispute more quickly even assuming all other things were equal.

Second, the interest in allowing "a local interest in having localized controversies decided at home" also weighs in favor of transfer. *Volkswagen II*, 545 F.3d at 315. As

Uber explains, the RFP process transpired at Uber's San Francisco headquarters. *See* Dkt. No. 11 at 3, 7. "[T]he services under the parties' Contract were to be provided to Uber's employees, most of whom are located in California." *Id.* at 7. "TSI's 'managers and agents' came to Uber's San Francisco, CA headquarters to manage and oversee' the initial launch of the travel services program under the parties' Contract." *Id.* (quoting Complaint, ¶ 32). And California law applies to this dispute.

TSI nevertheless contends that this interest weighs in favor of adjudicating the action in Dallas, Texas. It cites the location of its potential witnesses and its potential evidence to support this contention. But, as explained in further detail below, both parties can identify witnesses and evidence sources located closer to their preferred forum, and the witnesses Uber identifies appear to be more material to this dispute.

TSI also notes that it largely performed the contract in Dallas, Texas. This, too, is insufficient. The purpose of the Contract – to provide Uber's employees with corporate travel services that they could access from their location – suggests that the place where Uber received the services is more important to the Contract than the place where TSI performed the work. And San Francisco, California is the location where a different cause of action may have occurred: the alleged fraudulent misrepresentations that form the basis of Uber's anticipated counter-claim for fraudulent inducement.

Third, because California law governs this action, a transfer also helps ensure that a forum that is familiar with the governing state law will try the dispute and avoids potential conflict of law issues. TSI notes that "it is not a novel task for a federal

court sitting in diversity" to "apply the law of a different State." Dkt. No. 10 at 9. That is so. But the Northern District of California is still, as a general matter, the more appropriate forum to hear a case governed by California law. *See Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990) (noting that "'there is an appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws, and in law foreign to it'" (quoting *Gulf Oil Corp.* v. Gilbert, 330 U.S. 501, 508-09 (1947))).

Fourth, the private interests in securing the attendance of key witnesses and limiting the cost of attendance for willing witnesses weigh in favor of transfer as well. TSI has provided a longer list of potential witnesses. Dkt. No. 16 at 11. But most of these witnesses are its employees, meaning that they do not weigh all that heavily in the Court's analysis. *See Quicksilver, Inc. v. Academy Corp.*, No. 98-cv-1772-R, 1998 WL 874929, at *2 (N.D. Tex. Dec. 3, 1998) (providing that "[t]he availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience" from one party to the other). Further, Uber makes a more compelling case as to the importance of the (fewer) party and non-party witnesses that it identifies. TSI explains that its potential witnesses may "potentially testify[] to the nature of the work requested by Uber, the costs and expenditures involved, and other circumstances at issue." Dkt. No. 16 at 11. As a result, the Court is left wondering whether any of these witnesses is uniquely able to

put forth testimony that will be key to the dispute. In contrast, Uber notes that "[a]ll but one of the individuals actually mentioned in the Complaint reside in California or otherwise outside of Texas, and the remaining witness ... is a TSI employee." Dkt. No. 18 at 9. Uber's position wins out because "[t]he materiality and importance of each anticipated witness' testimony, rather than the number of witnesses residing in each location, is most important under forum non conveniens doctrine." *Hayes v. Segue Software, Inc.*, No. 3:01-cv-1490-D, 2001 WL 1464708, at *4 (N.D. Tex. Nov. 14, 2001).

The Court is not convinced that the private interest in access to sources of proof weighs in favor of either party's preferred forum. Uber explains that it "maintains all records relating to the subject of the plaintiff's complaint at its San Francisco, California headquarters." Dkt. No. 11 at 10-11. And TSI claims that "virtually all of the documents and data that TSI would utilize to support the testimony of these witnesses are located either on TSI's servers in Texas or on personal computers maintained by witnesses in Texas." Dkt. No. 16 at 11-12.

But, in light of the other private and public interest factors implicated, the Court finds that it would be in the interest of justice to transfer the action under Section 1404(a).

## Conclusion

The Court GRANTS Defendant's Motion to Transfer Case out of District/Division [Dkt. No. 10] for the reasons stated herein. This action will be transferred pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of California's San Francisco Division.

SO ORDERED.

DATED: January 11, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE